**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Bustos and Constancia Bustos,<br><br>    Plaintiffs,<br><br>vs.<br><br>Dignity Health d/b/a Chandler Regional Medical Center,<br><br>    Defendant. | No. CV-17-02882-PHX-DGC<br><br>**ORDER** |

Plaintiff Daniel Bustos and his daughter Constancia assert disability discrimination claims against Defendant Dignity Health. Doc. 1. Defendant moves for summary judgment. Doc. 43. The motion is fully briefed (Docs. 51, 55), and oral argument will not aid in the Court's decision. *See* Fed R. Civ. P. 78(b). For reasons stated below, the Court will deny the motion.

**I.    Background.**

Daniel lost his hearing at the age of three. His primary and preferred form of communication is American Sign Language ("ASL"). Constancia is not a licensed ASL interpreter, but is proficient in ASL and sometimes interprets for Daniel.

On September 13, 2015, Plaintiffs went to Defendant's hospital in Chandler, Arizona because Daniel was experiencing chest pain. He was admitted to the hospital and underwent heart surgery to repair a blocked artery. He was discharged one day after the surgery.

1    Plaintiffs filed suit in August 2017, claiming that Defendant discriminated against them based on Daniel's deafness by failing to provide an effective means of communication and forcing Constancia to serve as an interpreter. Doc. 1. Plaintiffs allege that the hospital's video remote interpreting ("VRI") system never worked and hospital staff denied Plaintiffs' requests for an in-person interpreter. *Id.* at 5-8. The complaint asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., the Rehabilitation Act of 1973 ("Rehab Act"), 29 U.S.C. § 794, the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116, and the Arizonans with Disabilities Act ("AzDA"), A.R.S. § 41-1492. *Id.* at 8-15. Plaintiffs seek declaratory and injunctive relief, compensatory damages, and attorneys' fees and costs. *Id.* at 15-17.

## II. Summary Judgment Standard.

Summary judgment is warranted where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences are drawn in that party's favor because "[c]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions[.]" *Id.* at 255; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Discussion.

### A. Discrimination Under the Relevant Statutes.

Defendant does not dispute that it is subject to the anti-discrimination provisions of the ADA, Rehab Act, ACA, and AzDA, and the parties agree that the elements of a discrimination claim under these statutes are similar. Docs. 47 at 51, 51 at 2 n.1; *see Updike v. Multnomah County*, 870 F.3d 939, 949 (9th Cir. 2017) (ADA expressly

modeled after Rehab Act); *Schmitt v. Kaiser Found. Health Plan of Wash.*, No. C17-1611-RSL, 2018 WL 4385858, at *1 (W.D. Wash. Sept. 14, 2018) (ACA and Rehab Act claims are the same); *Muhaymin v. City of Phoenix*, No. CV-17-04565-PHX-SMB, 2019 WL 699170, at *8 (D. Ariz. Feb. 20, 2019) (AzDA is consistent with the ADA); *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135-36 (9th Cir. 2001) (addressing the plaintiff's ADA, Rehab Act, and state law discrimination claims together). To prove that a defendant violated these laws, the disabled plaintiff must show that he was denied the defendant's services because of the disability. 42 U.S.C. § 12182(a); 29 U.S.C. § 794(a); 42 U.S.C. § 18116(a); A.R.S. § 41-1492.02(B); *see Updike*, 870 F.3d at 949; *Duvall*, 260 F.3d at 1135-36.

A hospital is liable to deaf patients where it fails to provide auxiliary aids needed for "effective communication." 42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. § 36.303(c)(1); 45 C.F.R. § 92.202(a); *see Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 906 (9th Cir. 2019). The type of auxiliary aid "necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. § 36.303(c)(1)(ii). Available auxiliary aids for deaf individuals include qualified in-person interpreters, VRI, computer-aided transcription services, written materials, and the exchange of handwritten notes. 42 U.S.C. § 12103(1); 28 C.F.R. §§ 35.104(a), 36.303(b); *see Updike*, 870 F.3d at 949-50; *Arizona v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). "In determining what type of auxiliary aid is necessary, a public entity must 'give primary consideration' to the accommodation requested by the disabled individual." *Updike*, 870 F.3d at 950 (quoting 28 C.F.R. § 35.160(b)(2)); *see Duvall*, 260 F.3d at 1137; 28 C.F.R. § Pt. 35, App. A.

Federal regulations implementing the ADA prohibit a hospital from requiring a deaf patient to bring another person to interpret for him. 28 C.F.R. § 36.303(c)(2). The regulations also prohibit the hospital from relying on the patient's companion to interpret

except in an emergency situation where no interpreter is available, or where the patient specifically requests that the companion provide such assistance, the companion agrees to do so, and reliance on the assistance is appropriate under the circumstances. 28 C.F.R. § 36.303(c)(3)(ii)-(iii); *see also* 45 C.F.R. § 92.201(e) (ACA regulations prohibiting the same with respect to individuals with limited English proficiency).

  **B.**  **Plaintiffs' Discrimination Claims.**

    **1.**  **Daniel's Communications with Hospital Staff.**

Defendant contends that Daniel was provided effective communication during his hospital stay because he was offered and used VRI. Doc. 47 at 56. A hospital that chooses to use VRI must ensure that it provides video and audio over a connection that delivers "clear, audible transmission of voices" and "high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication[.]" 28 C.F.R. § 36.303(f).

Daniel states that the hospital's VRI never functioned properly. Doc. 52-1 at 19. He explains that the VRI "would freeze up and not work, all the time." *Id.* at 20. Due to the constant malfunctioning, "[t]here was never a time when [they] had a successful conversation" and he "never saw a minute of smooth video or clear communication." *Id.* When pressed on this point in his deposition, Daniel made clear that "[n]ot one sentence, nothing," was ever successfully communicated through VRI. *Id.* at 34; *see id.* at 37-39, 45. Constancia similarly testified that the VRI malfunctioned when she was at the hospital and nurses confirmed that they tried to use VRI at other times to no avail. *Id.* at 62, 70-76, 81. A jury reasonably could find from this evidence that VRI was not an effective form of communication.

Defendant further contends that Daniel was comfortable communicating medical information in writing because he learned English in school, uses emails, text messages, and online shopping and banking, and communicates with customers at work through written notes. Doc. 47 at 56 (citing Doc. 47 ¶¶ 4-27). Daniel states that it was "really hard" for him to write in the hospital because one hand was bandaged and an IV

was in the other hand. Doc. 52-1 at 26-27. He further states that his English is not very good "so writing back and forth wouldn't be the greatest communication." Doc. 52-1 at 4. With respect to his education, he always had an interpreter in school who would help him with written assignments. *Id.* at 5-9. He works at Wal-Mart stocking shelves. *Id.* at 10. When customers learn he is deaf, they sometimes will write simple notes asking where products are located and he points them in the right direction. *Id.* at 11-12. But he communicates with coworkers through hand gestures, not English, and the company provides an ASL interpreter when he needs to read employment-related documents. *Id.* at 13.

Defendants have not shown that Daniel's knowledge and limited use of English compels a finding that the exchange of written notes was an effective form of communication. As noted, the type of auxiliary aid needed to ensure effective communication depends in large part on the nature and complexity of the communication involved and the context in which the communication occurs. 28 C.F.R. § 36.303(c)(1). "Medical evaluations often will be the type of complex and lengthy situation in which an ASL interpreter should be provided." *Updike*, 870 F.3d at 956. "[T]he interpretive agency guidelines accompanying the ADA regulations explain that the type of aids or services necessary for deaf individuals in medical settings may differ depending on the nature and complexity of the treatment provided." *Bates v. Delmar Gardens N., Inc.*, No. 4:15-CV-00783-AGF, 2017 WL 4038132, at *8 (E.D. Mo. Sept. 13, 2017). For instance, a deaf patient "may need a qualified interpreter to discuss with hospital personnel a diagnosis, procedures, tests, treatment options, surgery, or prescribed medication[,]" whereas a person with the same disability "who purchases an item in the hospital gift shop may need only an exchange of written notes to achieve effective communication." *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 343 n.5 (11th Cir. 2012) (quoting 28 C.F.R. pt. 36, app. A)).

Daniel was in the hospital for a life-threatening medical condition that required surgery. His natural and preferred language is ASL, and "primary consideration" must be

1 | given to his choice of auxiliary aid. 28 C.F.R. § 35.160(b)(2); *see Updike*, 870 F.3d
2 | at 950; *Duvall*, 260 F.3d at 1137; *Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088,
3 | 1100-01 (9th Cir. 2013). Whether the use of written notes concerning his serious medical
4 | condition and surgery was an effective form of communication is for the jury to decide.[1]
5 | *See Liese*, 701 F.3d at 343-44 (reversing summary judgment even though the plaintiff
6 | was able to communicate to a limited extent by writing notes); *VanValkenburg v. Or.
7 | Dep't of Corr.*, No. 3:14-CV-00916-MO, 2017 WL 532950, at *2 (D. Or. Feb. 8, 2017)
8 | (upholding jury verdict for the plaintiff where he preferred communicating through
9 | interpreters and had difficulty communicating by writing during medical appointments);
10 | *Me. Human Rights Comm'n v. Sunbury Primary Care, P.A.*, 770 F. Supp. 2d 370, 403 (D.
11 | Me. 2011) (finding triable issue as to whether the plaintiff's "difficulties reading and
12 | writing were sufficiently severe as to limit her understanding of [the doctor's] medical
13 | explanations . . . and handwriting"); *Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp.
14 | 2d 820, 828 (D. Md. 1998) (finding triable issue as to whether note passing was an
15 | adequate auxiliary aid); *Mayberry v. Von Valtier*, 843 F. Supp. 1160, 1167 (E.D. Mich.
16 | 1994) (denying summary judgment where the plaintiff "submitted evidence which would
17 | tend to show that passing notes did not result in effective communication with [her
18 | doctor]").

### 2. Constancia's Interpreting.

Constancia's discrimination claims are based on the allegation that hospital staff forced her to interpret. *See* Docs. 47 at 58, 55 at 3. The claims fail, Defendant contends, because Constancia interpreted voluntarily and at Daniel's request. Docs. 47 at 56-57, 55 at 3-6. But Plaintiffs testified that they repeatedly asked for an in-person interpreter every day Daniel was in the hospital, and the only option was for Constancia to interpret given that their requests were denied and VRI never worked. *See* Doc 52-1 at 21-26,

---

[1] Defendant's own expert testified that the handwritten notes between Daniel and hospital staff were merely "routine" interactions and "normal questions that would be asked." Doc. 45-3 at 16; *see* Doc. 47 at 48.

37-38, 45, 61-62, 69-76, 84. Accepting this evidence as true, a jury reasonably could find that Defendant forced Constancia to interpret.[2]

### 3. Conclusion.

"Generally, the effectiveness of auxiliary aids and[] services is a question of fact precluding summary judgment." *Chisolm v. McManimon*, 275 F.3d 315, 327 (3d Cir. 2001) (citing cases). Plaintiffs have come forward with enough evidence to survive summary judgment on each of their discrimination claims. *See Updike*, 870 F.3d at 956 (reversing summary judgment where "[t]he lack of an ASL translator . . . may have denied Updike the opportunity to communicate effectively during the medical evaluation" and the jury should have been allowed to "weigh [relevant] factors in deciding whether written communication, rather than an ASL translator, was an appropriate accommodation"); *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 840 (11th Cir. 2017) (finding that the patient and his son "demonstrated a genuine dispute of material fact on whether they could communicate effectively with medical staff" and noting that "reliance on companions for interpretive assistance (absent some narrow exceptions) violates the command of ADA regulations"); *Gough v. PeaceHealth St. Joseph Med. Ctr.*, No. 2:12-CV-00346-RAJ, 2013 WL 1148748, at *7 (W.D. Wash. Mar. 19, 2013) ("Plaintiffs have presented evidence that they were unable to understand the medical instructions and to participate in a meaningful dialogue with the health care providers. From this evidence, a reasonable trier of fact could determine that St. Joseph denied Plaintiffs full and equal treatment because of their hearing disability.").[3]

---

[2] Defendants do not argue that Constancia's interpreting constituted effective communication under the relevant statutes.

[3] Defendant's reliance on *Martin v. Halifax Healthcare Systems*, 621 F. App'x 594 (11th Cir. 2015), is misplaced. Doc. 48-3 at 17-18. The medical staff in that case immediately requested an ASL interpreter when the plaintiff arrived at the hospital and provided him bedside webcam interpreting services that functioned properly. 621 F. App'x at 602.

7

### C. Compensatory Damages.

"Even where a plaintiff has established that a covered entity violated [the statutes] by failing to ensure effective communication, a plaintiff is not entitled to monetary damages absent a showing of an 'intentional violation.'" *Viera v. City of New York*, No. 15 CIV. 5430 (PGG), 2018 WL 4762257, at *13 (S.D.N.Y. Sept. 30, 2018). To prove intentional discrimination, this Circuit "requires that the plaintiff show that a defendant acted with 'deliberate indifference,' which requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Updike*, 870 F.3d at 950-51 (quoting *Duvall*, 260 F.3d at 1139). "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Id.* at 951. "To meet the second prong, the entity's failure to act 'must be a result of conduct that is more than negligent, and involves an element of deliberateness.'" *Id.*

Defendant contends that there is no evidence that hospital staff acted with deliberate indifference. Docs. 47 at 57. Defendant asserts that although Plaintiffs claim to have made multiple requests for an in-person interpreter during Daniel's hospital stay, the only record of a request came on the final day and Defendants promptly provided an interpreter. Docs. 47 at 57, 55 at 10. But the evidence on summary judgment must be construed in favor of Plaintiffs. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587; *see also Crane v. Lifemark Hosps., Inc.*, 898 F.3d 1130, 1136 (11th Cir. 2018). Plaintiffs' testimony that they repeatedly requested an in-person interpreter satisfies the first element of the deliberate indifference test – Defendant was on notice of the need for the accommodation. *See Updike*, 870 F.3d at 951.

Plaintiffs' testimony also satisfies the second prong of the deliberate indifference test. Daniel states that hospital staff would not listen to him or Constancia when they asked for an in-person interpreter, and "[i]nstead they would go and call technical to

come over and work on the VRI." Doc. 52-1 at 22-24.  He "ask[ed] in vain over and over again" for an interpreter but hospital staff kept "trying to make [him] use the VRI device to no avail." *Id.* at 42.  He became frustrated because, from the first night in the hospital, "they would never bring in a live interpreter." *Id.* at 24; *see id.* at 37.  Constancia states that when she arrived at the hospital each day she asked why no interpreter was present given the VRI problems.  *Id.* at 69-72.  Hospital staff would simply respond: "[N]ever mind. You're here." *Id.* at 76-77.

This evidence shows that hospital staff, knowing Daniel required an interpretive aid, persisted in using a VRI system that never functioned properly.  In other words, the evidence supports a finding that hospital staff deliberately "disregarded a substantial risk that [Daniel was] being denied effective communication." *Sunderland v. Bethesda Hosp., Inc.*, 686 F. App'x 807, 816-17 (11th Cir. 2017); *see Liese*, 701 F.3d at 351 (hospital staff's "apparent knowledge that [the patient] required an additional interpretive aid to effectively communicate with him and [their] deliberate refusal to provide that aid satisfies the deliberate indifference standard.").

Defendant notes that an interpreter was provided "on the day of Daniel's discharge, in direct response to the inability to use VRI[.]" Doc. 47 at 57.  But Defendant fails to explain why the interpreter was not provided earlier, as requested by Plaintiffs. *See Updike*, 870 F.3d at 954 (reversing summary judgment where there were "disputed issues of material fact as to whether, at each of Updike's requests for accommodation, the County's failure to provide an accommodation was done with deliberate indifference, rather than merely negligence").  The Court will deny summary judgment with respect to damages.[4]

---

[4] Defendant's citation to *McCullum v. Orlando Regional Healthcare System, Inc.*, 768 F.3d 1135 (11th Cir. 2014), is inapposite as there was no evidence that "[the patient] or his family members ever requested an interpreter." 768 F.3d at 1148.

9

1 **IT IS ORDERED** that Defendant's motion for summary judgment (Doc. 40) is **denied**. The Court will set a telephonic hearing with the parties to be held on **August 9, 2019 at 3:00 p.m.** for purposes of setting a final pretrial conference and trial date in this matter. Counsel for Plaintiffs shall initiate a telephone conference to include counsel for all parties and the Court. If a dial-in number is to be used, counsel for Plaintiffs shall provide the dial-in information to counsel for all parties and the court no later than **12:00 noon on August 8, 2019**.

Dated this 2nd day of August, 2019.

*David G. Campbell*
David G. Campbell
Senior United States District Judge